UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FAMILY TREE FARMS, LLC, | ) | 1:08-cv-00481-AWI-SMS |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATIONS RE: |
| v. | ) | PLAINTIFF'S MOTION FOR DEFAULT |
| | ) | JUDGMENT AND REQUEST FOR JUDICIAL |
| ALFA QUALITY PRODUCE, INC., et al., | ) | NOTICE (DOCS. 31, 33) |
| | ) | |
| | ) | DIRECTIONS TO THE CLERK TO SERVE |
| Defendants. | ) | DEFENDANTS WITH COPIES OF THESE |
| | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | |

Plaintiffs are proceeding with a civil action in this Court and have filed a motion for default judgment against two defendants. The matter is before the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 72-302(c)(19).

The notice of motion and motion were filed on February 5, 2009, with a supporting memorandum, a request for judicial notice,[1] and the declarations of Andy Muxlow and Christopher S. Hall with exhibits. Proofs of service reflect that these

---

[1] Plaintiff's request for judicial notice will be granted because it seeks judicial notice of documents filed in this action. Such a request is appropriately granted because the Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir. 1981).

documents were served on Pinchas Avichezer and Mouiz Khalifeh of Alfa Quality Produce, Inc., on February 5, 2009, at 8052 Preston Court, Brooklyn, New York, 11236. By separate order, the hearing on the motion was vacated, and the matter was submitted for decision.

I. <u>Legal Standards</u>

A court has the discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where 1) the defendant has been served with the claim; 2) the defendant's default has been entered for failure to appear; 3) if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and 4) the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect. Fed. R. Civ. P. 55(b); <u>Alan Neuman Productions, Inc. v. Albright,</u> 862 F.2d 1388, 1392 (9th Cir. 1988). Factors that may be considered by courts in exercising discretion as to the entry or setting aside of a default judgment include the nature and extent of the delay, <u>Draper v. Coombs</u>, 792 F.2d 915, 924-925 (9th Cir. 1986); the possibility of prejudice to the plaintiff, <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir.1986); the merits of plaintiff's substantive claim, <u>id.</u>; the sufficiency of the allegations in the complaint to support judgment, <u>Alan Neuman Productions, Inc.</u>, 862 F.2d at 1392; the amount in controversy, <u>Eitel v. McCool</u>, 782 F.2d at 1471-1472; the possibility of a dispute concerning

2

1  material facts, <u>id.</u>; whether the default was due to excusable
2  neglect, <u>id.</u>; and the strong policy underlying the Federal Rules
3  of Civil Procedure that favors decisions on the merits, <u>id.</u>

4      A default judgment generally bars the defaulting party from
5  disputing the facts alleged in the complaint, but the defaulting
6  party may argue that the facts as alleged do not state a claim.
7  <u>Alan Neuman Productions, Inc. v. Albright</u>, 862 F.2d 1388, 1392.
8  Thus, well pleaded factual allegations, except as to damages, are
9  taken as true; however, necessary facts not contained in the
10 pleadings, and claims which are legally insufficient, are not
11 established by default. <u>Cripps v. Life Ins. Co. of North America,</u>
12 980 F.2d 1261, 1267 (9th Cir. 1992); <u>TeleVideo Systems, Inc. v.</u>
13 <u>Heidenthal</u>, 826 F.2d 915, 917 (9th Cir. 1987).

14     II. <u>Jurisdiction</u>

15     This Court has jurisdiction of the action pursuant to the
16 Perishable Agricultural Commodities Act of 1930 (PACA) as
17 amended, 7 U.S.C. §§ 499e and 499e(c)(5), which provide for a
18 suit in a court of competent jurisdiction, including the district
19 courts of the United States, for the beneficiary of a trust
20 concerning perishable agricultural commodities to enforce payment
21 from the trust, and 28 U.S.C. § 1331, extending jurisdiction to
22 actions arising under federal law.

23     In addition to the claims for breach of the statutory trust
24 provisions of PACA and for failure to pay the amounts invoiced
25 (Cmplt. pp. 2-5), the complaint contains pendent state claims for
26 simple breach of contract, fraud, and negligent
27 misrepresentation. (<u>Id.</u> pp. 5-8.)
28 /////

1    III. <u>Service and Notice</u>

2        Plaintiff asserts that the complaint was properly served by

3   publication pursuant to the Court's order of September 16, 2008,

4   directing service by publication pursuant to Plaintiff's

5   application.

6        The declaration of Lara Moriarty, Plaintiff's attorney,

7   submitted in connection with the application, established that in

8   April 2008, Plaintiff attempted to serve Defendants at the

9   address of 8052 Preston Ct., Brooklyn, New York, 11236-9400,

10  which appeared on paperwork sent to Plaintiff by Defendants; an

11  unnamed person at the location was described by a process server

12  as an authorized person to accept service, but she was not the

13  agent for service for Defendant Alfa. (Decl. ¶¶ 11-12.) Copies of

14  the case documents were sent by mail to the same address, but

15  they were returned with a note that the company and individual

16  were no longer at that address, and mail was not being forwarded;

17  however, a new address of 23 Brooklyn Terminal Market, Brooklyn,

18  New York, 11236, was stated on the envelopes.

19       Plaintiff again attempted to serve the defendants at the new

20  address in August 2008; however, a current tenant and the

21  landlord informed the process server that Defendants had moved to

22  85-30 Preston Court, Brooklyn, New York.

23       The process server then attempted to serve both defendants

24  at the 85-30 Preston Court address, where there was a sign for

25  Alfa Quality Produce, Inc., but the process server was told that

26  the company was out of business; an attempt to call the telephone

27  number on the sign resulted in discovery that the number was

28  disconnected, and the process server was unable to obtain any

4

1  additional information regarding the Defendants. (Id. ¶¶ 13-15.)

2       Plaintiffs conducted an investigation concerning the

3  whereabouts of Defendants, including verifying that Defendant

4  Alfa was listed as an active corporation with an address of 8052

5  Preston Court, Brooklyn, New York, 11236, with Pinchas Avichezer

6  as the chairman and/or chief executive officer with no registered

7  agent listed; further, there was an entry for Alfa Quality, Inc.,

8  with an address at Brooklyn Terminal Market, Unit 23, Brooklyn,

9  New York 11236 (an address where service was previously

10 attempted) with no registered agent. (Decl. ¶¶ 16-18.)

11      Further, Plaintiff has established by declarations that

12 Defendants knew that the action was pending but made themselves

13 unavailable for service. (Decls. of Moriarty in Supp. of Req. for

14 Default (Docs. Nos. 10, 11), ¶¶ 7-8.)

15      Fed. R. Civ. P. 4(e)(1) provides in pertinent part that

16 service may be effected upon individuals in any judicial district

17 of the United States pursuant to the law of the state in which

18 the district court is located. Cal. Civ. Proc. Code § 415.50(a)

19 provides that a summons may be served by publication if upon

20 affidavit it appears to the satisfaction of the court in which

21 the action is pending that the party to be served cannot with

22 reasonable diligence be served in another specified manner, and a

23 cause of action exists against the party upon whom service is to

24 be made, or he or she is a necessary or proper party to the

25 action. As previously noted, a claim is stated against each

26 defendant.

27      Several attempts to serve a party at the proper place

28 constitute reasonable diligence. Bonita Packing Co. v.

1  O'Sullivan, 165 F.R.D. 610, 613 (C.D. Cal. 1995); Espindola v.

2  Nunez, 199 Cal.App.3d 1389, 1391-92 (1988). Accordingly,

3  Plaintiff has established that it exercised reasonable diligence

4  in seeking to serve the Defendants by other means.

5      Section 415.50(b) provides that if the party to be served

6  resides or is located outside of California, the court may order

7  the summons to be published in a named newspaper outside

8  California that is most likely to give actual notice to that

9  party. Further, except as otherwise provided by statute, the

10 publication shall be made as provided by Cal. Govt. Code § 6064,

11 which in turn provides that publication shall be once weekly for

12 four successive weeks, or four publications with at least five

13 days intervening.

14     Plaintiff established by the declaration of Moriarty

15 submitted in connection with the application for service by

16 publication that the Brooklyn Daily Eagle and the Brooklyn Paper

17 were newspapers of general circulation published in Brooklyn, New

18 York, and that publication of the summons in the newspapers was

19 likely to give actual notice to Defendants because the

20 Defendants' business addresses had been within the city and

21 county in which the newspapers were published. (Decl. ¶ 18.) The

22 affidavit of publication filed on December 19, 2008, reflects

23 four publications of the summons occurring on November 14, 21,

24 and 28, 2008, and December 5, 2008, in the Brooklyn Daily Eagle

25 and Daily Bulletin. Thus, Plaintiff has established adequate

26 publication in a newspaper of general circulation published in

27 Brooklyn, New York, with sufficient likelihood of giving actual

28 notice.

1       Accordingly, the Court concludes that the summons and
2  complaint were served no later than December 5, 2008.

3       Further, the notice was adequate pursuant to Fed. R. Civ. P.
4  55(d) and 54(c), which require that a judgment by default shall
5  not be different in kind from or exceed in amount that prayed for
6  in the demand for judgment. Plaintiff expressly alleged that the
7  total of unpaid balances for shipments of commodities pursuant to
8  seven separate contracts transacted between May 17, 2007, and
9  July 18, 2007, were $117,727.70 (Cmplt. p. 3); Plaintiff attached
10 the invoices for the transactions reflecting the amounts invoiced
11 and one partial payment (Cmplt. p. 8, Ex. A). Plaintiff expressly
12 prayed for general damages, prejudgment interest, post-judgment
13 interest of ten per cent per annum from the date of entry of
14 judgment, and costs. (Cmplt. p. 8.)

15      In most respects, Plaintiff sought in the complaint the
16 amount and type of relief demanded in the instant application for
17 default judgment, including damages consisting of a principal
18 amount of $117,727.70; pre-judgment interest pursuant to Cal.
19 Civ. Code § 3288 from April 8, 2008, through the entry of
20 judgment; and post-judgment interest. (Mot. p. 3.)

21      However, Plaintiff did not in the complaint allege
22 entitlement to punitive damages or pray for punitive damages.
23 Therefore, it would be inappropriate for Plaintiff to recover
24 punitive damages in the instant application because such damages
25 are beyond the scope of the complaint, and thus no meaningful
26 notice has been given of a demand for punitive damages. See,
27 Silge v. Merz, 510 F.3d 157, 160-61 (2nd Cir. 2007) (holding that
28 a demand for prejudgment interest, absent from the demand portion

                                    7

1  of the complaint, was not implied by a generic request for such

2  other and further relief that the court would deem just and

3  proper).

4      Finally, Fed. R. Civ. P. 55(b)(2) requires that written

5  notice of an application for default judgment be served at least

6  three days prior to the hearing on a defaulting party who has

7  appeared in the action. Here, a proof of service made under

8  penalty of perjury establishes that the motion for default

9  judgment was served on both the corporate and individual

10 defendant on February 5, 2009.

11     Therefore, it is concluded that legally sufficient service

12 of the complaint and summons were effected, and adequate notice

13 was given to Defendants, with the exception of notice with

14 respect to entitlement to, and a demand for, punitive damages.

15     IV. <u>Default</u>

16     Upon Plaintiff's request, the clerk entered the defaults of

17 Defendants Mouiz Khalifeh and Alfa Quality Produce, Inc., on

18 January 14, 2009, after the running of the twenty-day time period

19 after service prescribed by Fed. R. Civ. P. 12(a). (Docs. 28-29.)

20     V. <u>Status of the Defendants</u>

21     It is alleged on information and belief that neither of the

22 Defendants is an infant, incompetent person, or member of the

23 armed services. (Decl. of Muxlow, ¶¶ 3-4.)

24     VI. <u>Legal Sufficiency of the Complaint</u>

25         A. <u>PACA Claim</u>

26     Title 7 U.S.C. § 499b(4) provides in pertinent part that it

27 shall be unlawful in, or in connection with, any transaction in

28 interstate or foreign commerce, for any commission merchant,

1 dealer, or broker to fail or refuse truly and correctly to

2 account and make full payment promptly in respect of any

3 transaction in any perishable agricultural commodity to the

4 person with whom such transaction is had, or to fail, without

5 reasonable cause, to perform any specific action or duty, express

6 or implied, arising out of any undertaking in connection with any

7 such transaction, or to fail to maintain the trust as required

8 under section 499e(c). In pertinent part, § 499e(c)(2) provides

9 for a trust with respect to commodities received:

10      2) Perishable agricultural commodities received by
        a commission merchant, dealer, or broker in all
11      transactions, and all inventories of food or other
        products derived from perishable agricultural
12      commodities, and any receivables or proceeds from the
        sale of such commodities or products, shall be held by
13      such commission merchant, dealer, or broker in trust
        for the benefit of all unpaid suppliers or sellers of
14      such commodities or agents involved in the transaction,
        until full payment of the sums owing in connection with
15      such transactions has been received by such unpaid
        suppliers, sellers, or agents. Payment shall not be
16      considered to have been made if the supplier, seller,
        or agent receives a payment instrument which is
17      dishonored.

18 7 U.S.C. § 499e(c)(2). The unpaid supplier must retain and

19 preserve the benefits of the trust by giving notice of intent to

20 do so to the commissioner merchant, dealer, or broker, and this

21 may be accomplished by giving written notice on ordinary and

22 usual billing or invoice statements. § 499e(c)(3), (4). The

23 notice must be given to the buyer within thirty days of a payment

24 default, or by referring to the trust on invoices. Id.

25      The elements of recovery under a PACA trust claim are thus

26 the transaction, here a contract for sale of perishable

27 agricultural commodities; purchase and receipt of the perishable

28 agricultural commodities by a commission merchant, dealer, or

broker engaged in the handling of produce in interstate and/or foreign commerce, who is thus subject to PACA; a failure to pay fully and promptly, or a failure to maintain the trust as required by § 499e(c); and preservation of trust rights by the seller by notifying of intent to preserve the benefits of the trust on invoices or billing statements. 7 U.S.C. §§ 499b, 499e(c); Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 284 (9th Cir. 1997).

Here, Plaintiff alleged the entry between Plaintiff and Defendant Alfa Quality Produce, Inc., a New York corporation conducting business in the state of California, into several oral agreements via telephone to sell and ship specified quantities of perishable agricultural commodities in the form of fresh fruit at specified prices from Plaintiff's California facility to Defendant's facility in Brooklyn, New York; Plaintiff created invoices of specified dates (May 17 and 29, June 1, 7, 28, and July 3 and 18, 2007) that reflected preservation of PACA rights and were created on the day of shipment. (Cmplt. ¶ 7.) Plaintiff alleged that Plaintiff has a PACA license and preserved its PACA trust rights by printing a clause on the face of each invoice that was consistent with the requirements of 7 U.S.C. § 499e(c)(3) and (4). (Id. at ¶¶ 7-8.) Plaintiff further alleged that Defendant received a copy of each invoice for each shipment but failed or refused to make full payment with respect to any of the transactions, making only one partial payment of $22,839.00 for invoice no. 3301, leaving a balance of $3450.50 on that invoice and a balance of $117,727.70 on all invoices. Plaintiff directly alleges in the complaint that the ordered fruit was

shipped to Defendant in a timely fashion. (Id. ¶ 11.) Although
the complaint does not allege that Defendant received the
shipments, Muxlow declares that Defendant Khalifeh contacted him
in late July 2007 by telephone to assert that Defendants could
not sell some of the fruit and that the fruit thus had to be
destroyed, and that he would FAX a copy of an invoice for the
destruction, which was later received and which investigation
revealed appeared to be fraudulent. (Decl. ¶¶ 9-10.) In addition,
Plaintiff received a letter dated August 15, 2007, from an
attorney named Norman S. Langer, who was then Defendants'
counsel, who referred to a statement for $95,689.70 from
Plaintiff dated August 14, 2007, and stated that the merchandise
shipped by Plaintiff was of inferior quality, inedible, was
rejected by the U.S.D.A., and was dumped as not saleable. (Decl.
¶ 11, Ex. C.) This evidence concerning the balance due on shipped
fruit is sufficient to warrant an inference that all the shipped
fruit was received.

     Plaintiff alleges that despite several attempts to receive
payment, no payment was received, and any objection to the fruit
was not timely; in any event, no documentation of inferiority or
unsuitability of the fruit was received, and Defendants in fact
made false and misleading statements regarding the quality of the
product shipped. (Cmplt. ¶¶ 10, 12-17.)

     Plaintiff thus has alleged and/or has submitted evidence of
the transactions; preservation of trust rights by the seller by
notifying of the intent to preserve the trust benefits on
invoices; shipment and receipt of the ordered fruit; and failure
to pay fully and promptly.

A PACA plaintiff is required to show that the purchase and receipt of perishable agricultural commodities was by a commission merchant, dealer, or broker engaged in the handling of produce in interstate and/or foreign commerce who is thus subject to PACA.

Plaintiff has alleged that the shipments of fruit were from California to New York (Cmplt. ¶¶ 7, 11), and thus has alleged facts sufficient to show that the commerce was between any state and any place outside thereof and therefore was "interstate or foreign commerce" as defined in 7 U.S.C. § 499a(b)(3). Fresh fruit (Cmplt. ¶ 7) qualifies as a "perishable agricultural commodity" within the meaning of the statute. 7 U.S.C. § 499a(4)(A). Plaintiff alleged that Defendant Alfa Quality Produce, Inc., was a New York corporation conducting business in the county of Fresno, state of California, and that Defendant had a facility in New York where Plaintiff demonstrated that Defendant had received the fruit. (Cmplt. ¶¶ 4, 7; Decl. of Muxlow ¶ 8-12, 15.) Plaintiff thus adequately established that Defendant Alfa Quality Produce, Inc., was a "commission merchant," or a person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another. 7 U.S.C. § 499a(b)(5).

Plaintiff has thus demonstrated that Defendant Alfa Quality Produce, Inc., was a commission merchant who was and is subject to PACA.

Accordingly, the Court concludes that the complaint is legally sufficient to state a claim or claims under PACA against

1 all defendants for enforcement of the statutory trust based on a

2 failure to perform the duty to account and pay fully and

3 promptly, and to conserve the trust assets for the benefit of

4 Plaintiff.

5             B. <u>Breach of Contract</u>

6      The elements of a claim for breach of contract are the

7 existence of a contract, Plaintiff's performance thereof or

8 excuse for nonperformance, Defendant's breach, and damages

9 resulting therefrom. <u>Reichert v. General Ins. Co. of America</u>, 68

10 Cal.2d 822, 830 (1968); <u>Acoustics, Inc. v. Trepte Construction</u>

11 <u>Co.</u>, 14 Cal.App.3d 887, 913 (1971).

12      Plaintiff has alleged that it entered into several oral

13 agreements for the sale and shipment of specific quantities of

14 fresh fruit from California to Brooklyn; the quantity and price

15 of the fruit were agreed upon, and each shipment of fruit was

16 accepted without dispute as to the quality of each shipment until

17 after the last shipment had been received; and Plaintiff

18 performed all conditions, covenants, and promises excused by

19 Defendant's nonperformance and breach under the contract. (Cmplt.

20 ¶¶ 7, 26, 28.) Further, Alfa materially and willfully breach the

21 terms of the contract by failing to pay for the product shipped

22 by Plaintiff to Alfa's Brooklyn facility by paying only

23 $22,839.00. (<u>Id.</u> ¶ 27.)

24      Therefore, Plaintiff alleged all the elements of a claim for

25 breach of contract, and the Court concludes that the complaint

26 states a legally sufficient claim for breach of contract.

27      The Court notes that it is specifically provided in PACA

28 that the remedies created by the Act are in addition to, and are

1  not intended to in any way abridge or alter, the remedies

2  existing at common law or by statute. § 499e(b).

3          C. <u>Fraud, or Intentional Misrepresentation</u>

4      The elements of fraud that will give rise to a tort action

5  for deceit are misrepresentation, i.e., false representation,

6  concealment, or nondisclosure; knowledge of falsity, or scienter;

7  intent to defraud, i.e., to induce reliance; justifiable

8  reliance; and resulting damage. <u>Engalla v. Permanente Medical</u>

9  <u>Group, Inc.</u>, 15 Cal.4th 951, 974 (1997).

10     Here, Plaintiff alleged that Defendants, Alfa Qualify

11  Produce, Inc. and Mouiz Khalifeh, individually, did not object to

12  the quality of the product shipped by Plaintiff in a timely

13  fashion. (Cmplt. ¶ 31.) Further, an invoice dated July 12, 2007,

14  stating it was from Delta Waste Management at 847 Shepard Avenue,

15  Brooklyn, New York, was faxed to Plaintiff's employee Andy Muxlow

16  by Defendant on July 26, 2007, indicating removal of eight

17  pallets of fruit billed to the address of Defendant's facility in

18  Brooklyn. (<u>Id.</u> ¶ 31.) However, when Plaintiff contacted Delta

19  Waste Services (DWS) located at 847 Shepard Avenue in Brooklyn to

20  verify the authenticity of the invoice provided, Paul McClintock,

21  President of DWS, wrote a letter to Plaintiff stating that the

22  invoice was not from DWS, and there was further no record of any

23  invoice from the DWS business having issued for that amount;

24  further, a sample invoice from DWS faxed to Plaintiff from a

25  customer service representative of DWS revealed that DWS's

26  invoices were different from the invoice received from Defendants

27  that allegedly had issued from Delta Waste Management.

28  Accordingly, Plaintiff alleged that the invoice provided by

1  Defendants with the date of July 12, 2007, was false and had been
2  falsified by Defendants, who used DWS's address and created a
3  fraudulent invoice. (Id. ¶¶ 32-33.) Although an attorney for
4  Defendants sent a letter to Plaintiff claiming that the
5  merchandise sent was inedible and dumped as not saleable, when
6  Plaintiff requested documentation or proof of rejection by the
7  U.S.D.A., none was provided. (Id. at ¶ 34.)

8       The declaration of Muxlow confirms the facts alleged in the
9  complaint. (Decl. ¶¶ 9-17.)

10      Plaintiff have thus established a false representation in
11 the form of an intentional misrepresentation, or the suggestion
12 or assertion, as a fact, of that which is not true, by one who
13 does not believe it to be true, within the meaning of Cal. Civ.
14 Code § 1710.

15      Plaintiff further alleges that Defendants intended to use
16 the false invoice to excuse it from paying for the several
17 shipments of fruit it had ordered and not paid for; and that
18 Defendants owed Plaintiff $117,727.70 for the product that had
19 been shipped. Further, had the product truly been of unacceptable
20 quality, Defendants would not be required to pay for the
21 shipment, but that Defendants owed Plaintiff the stated sum.
22 (Cmplt. ¶¶ 35-37.)

23      The Court concludes from the allegations of the complaint
24 that Plaintiff has alleged the making of an intentionally false
25 representation with knowledge of its falsity with resulting
26 damages. Further, the facts alleged support an inference of an
27 intention to defraud the Plaintiff and induce reliance by the
28 Plaintiff upon the false representation to the detriment of

15

1  Plaintiff.

2      Therefore, the Court concludes that Defendants stated a

3  claim for intentional misrepresentation.

4          D. <u>Negligent Misrepresentation</u>

5      The elements of a claim for negligent misrepresentation are

6  1) a defendant's representation of a material fact; 2) falsity of

7  the fact; 3) knowledge by the defendant that it was false, or

8  negligent or reckless lack of reasonable grounds to believe the

9  representation to be true; 4) intent to induce the other party to

10 act on the representation; and 5) injurious reliance by the other

11 party on the representation. <u>Howell v. Courtesy Chevrolet, Inc.</u>,

12 16 Cal.App.3d 391, 402 (1971).

13     In addition to the other facts discussed above, Plaintiff

14 alleged that with respect to  Defendants' misrepresentations

15 concerning the quality of the shipped fruit and the false

16 invoice, Defendants had no reasonable ground for believing that

17 the pallets of fruit were inedible and had to be destroyed.

18     Plaintiff has thus set forth a legally sufficient claim for

19 negligent misrepresentation in the complaint.

20         E. <u>Damages</u>

21     First, the Court notes that Plaintiff has established

22 damages by evidence. The declaration of Muxlow establishes the

23 authenticity of the invoices attached to the declaration, which,

24 along with the remainder of the declaration, reveal that

25 $117,727.70 is the sum that remains owing. (Decl. ¶¶ 8-17.)

26             1. <u>PACA Relief</u>

27     Any commission merchant, dealer, or broker who violates any

28 provision of § 499b is liable to the persons injured for the full

amount of damages, 7 U.S.C. § 499e. Thus, Plaintiff is entitled
to judgment for the principal amount of $117,727.70.

### 2. State Claims

Plaintiff is thus entitled to actual damages for the loss or
harm suffered by Defendants' alleged unlawful acts pursuant to
Cal. Civ. Code §§ 3281 and 3282.

However, as noted in part III hereinabove, Plaintiff did not
pray for or demand punitive damages; hence, Plaintiff has not
shown entitlement to punitive damages in connection with a
judgment by default.

### 3. Prejudgment Interest

In the complaint, Plaintiff prays for prejudgment interest
at the maximum legal rate from the date of demand until the entry
of judgment. (Cmplt. p. 8.) In the motion before the Court,
Plaintiff seeks prejudgment interest at the rate of ten per cent
per annum from the date of filing the complaint in this action,
which was April 8, 2008, pursuant to Cal. Civ. Code § 3289(b).

The basis of this Court's subject matter jurisdiction over
this action is the PACA claim discussed above. The fraud claim,
however, is a pendent state claim. The precise basis of a federal
court's jurisdiction over a state law claim is irrelevant for
Erie purposes; where state law provides the rule of decision, it
is the duty of federal courts to ascertain and apply that law. In
re Exxon Valdez, 484 F.3d 1098, 1100 (9th Cir. 2007). Prejudgment
interest is a substantive part of a plaintiff's claim, and not
merely a procedural mechanism; thus, state law governs
entitlement to it as well as its computation, unless preempted by
federal law. Id. at 1101.

Cal. Civ. Code § 3287(a) provides that every person who is entitled to recover damages certain or capable of being made certain by calculation is also entitled to recover interest thereon from that day; § 3287(b) provides that every person who is entitled under any judgment to receive damages based on a cause of action in contract where the claim was unliquidated may recover interest from a date prior to the entry of judgment as the court may in its discretion fix but in no event earlier than the date the action was filed. Section 3288 provides that in actions for breach of an obligation not arising from contract, and in every case of fraud, malice, or oppression, interest may be given in the discretion of the jury. Section 3289 provides that if a contract entered into after 1986 does not state a legal rate of interest, the obligation bears interest at ten per cent per annum.

It therefore appears that Plaintiff is entitled to receive on the claim for breach of contract against Defendant Alfa Quality Produce, Inc., prejudgment interest on the liquidated sum of $117,727.70 from the date the action is filed until judgment at the amount of ten per cent on the claim for breach of contract claim.

Defendant does not brief the rate of prejudgment interest applicable with respect to the fraud and negligent misrepresentation claims that are stated against both defendants. With respect to the fraud claims against Defendant Khalifeh, a jury has discretion to award prejudgment interest on the Plaintiff's loss. Alliance Mortgage Co. v. Rothwell, 10 Cal.4th 1226, 1241 (1995). However, because there is no legislative act

1  specifying the rate of prejudgment interest for a fraud claim,
2  the rate set forth in Cal. Const., art. XV, § 1, of seven per
3  cent per annum, is applicable to the award of tort damages.
4  Michelson v. Hamada, 29 Cal.App.4th 1566, 1585 (1994). Plaintiff
5  has not established entitlement to prejudgment interest of ten
6  per cent on the tort claims against Defendant Mouiz Khalifeh.

7                    4. Post-Judgment Interest

8       Plaintiff seeks post-judgment interest at the rate of .43
9  per cent per annum. Plaintiff's request is briefed in the
10 declaration of Christopher Hall.

11      In diversity actions, state law generally determines the
12 rate of prejudgment interest, and post-judgment interest is
13 governed by federal law. 28 U.S.C. § 1961; Citicorp Real Estate
14 v. Smith, 155 F.3d 1097, 1107-08 (a9th Cir. 1998). As to post-
15 judgment interest, Plaintiffs seek, and are entitled to, post-
16 judgment interest at the federal rate pursuant to 28 U.S.C. §
17 1961, to be calculated from the date of the entry of judgment.
18 Post-judgment interest is calculated "from the date of the entry
19 of the judgment, at a rate equal to the weekly average 1-year
20 constant maturity Treasury yield, as published by the Board of
21 Governors of the Federal Reserve System, for the calendar week
22 preceding the date of the judgment." 28 U.S.C. § 1961(a).
23 Plaintiff attaches the yield for January 21, 2009, and asserts
24 that .43 per cent per annum is the rate. However, calculations at
25 the time of judgment may supersede these calculations.

26      The Court concludes that Plaintiff is entitled to post-
27 judgment interest at the rate calculated at the date of judgment
28 until the judgment is paid.

1           5. <u>Costs</u>

2      Plaintiff seeks costs, including a filing fee and fees for a

3 process server and service by publication, totaling $1617.50.

4 (Hall Decl. ¶ 14.)

5      Plaintiff has not briefed the legal basis of Plaintiff's

6 claim entitlement to costs. Plaintiff has not submitted any

7 evidence or authority that would entitle Plaintiff to costs under

8 PACA statutes. Hence, in the absence of information or briefing

9 from Plaintiff, it is assumed that Plaintiff meant to collect

10 costs pursuant to Fed. R. Civ. P. 54(d), which provides that

11 unless a federal statute, the rules, or a court order provide

12 otherwise, costs, other than attorney's fees, should be allowed

13 to prevailing party.

14      Title 28 U.S.C. § 1920(1) provides that clerk's fees are

15 taxable. Once an item is determined to fall within § 1920, the

16 power to tax such costs is qualified only by the requirement that

17 they be necessarily obtained for use in the case. <u>Alflex Corp. v.

18 Underwriters Laboratories, Inc.</u>, 914 F.2d 175, 177 (9th Cir.

19 1990). Marshal's fees and fees for service by a person other than

20 the Marshal under Fed. R. Civ. P. 4 may be recovered; private

21 process servers' fees are properly taxed as costs. <u>Alflex Corp.

22 v. Underwriters Laboratories, Inc.</u>, 914 F.2d 175, 178 (9th Cir.

23 1990). The Court notes that in this action, service by

24 publication was ordered because the Court found that Plaintiff

25 had made a diligent and reasonable effort to serve Defendants and

26 had been unsuccessful. (Doc. 19.) The Court therefore concludes

27 that Plaintiff is entitled to all claimed costs, including the

28 costs of service by publication, which the Court concludes were

1  necessarily incurred in this action.

2       VII. <u>Discretionary Factors</u>

3       Here, it does not appear that there is any risk of mistake

4  or excusable neglect on the part of anyone with a potential

5  interest in the subject matter of the instant action. Further,

6  there is no apparent likelihood of a dispute as to a material

7  fact essential to the Plaintiff's case. No just cause for delay

8  appears. It is apparent from the declarations submitted to the

9  Court that none of the defendants is an infant, incompetent, or

10 member of the armed services. There does not appear to be any

11 reason why the general policy in favor of a decision on the

12 merits would warrant refusing to enter the requested default

13 judgment.

14      Accordingly, the Court finds that Plaintiff has shown its

15 entitlement to a default judgment.

16      VIII. <u>Disposition</u>

17           A. <u>Directions to Clerk</u>

18      The Clerk IS DIRECTED to serve a copy of these findings and

19 recommendations on Defendants Mouiz Khalifeh of Alfa Quality

20 Produce, Inc., and on Pinchas Avichezer for Defendant Alfa

21 Quality Produce, Inc., at 8052 Preston Court, Brooklyn, New York,

22 11236.

23           B. <u>Recommendations</u>

24      Accordingly, it IS RECOMMENDED that

25      1) Plaintiff's motion for default judgment BE GRANTED; and

26      2) Plaintiff's request for judicial notice BE GRANTED; and

27      3) Judgment BE ENTERED in favor of Plaintiff Family Tree

28 Farms, LLC, and against Defendant Alfa Quality Produce, Inc., on

1  all claims, for $117,727.70 in damages; $1617.50 in costs;
2  prejudgment interest at the rate of ten per cent per annum to run
3  beginning on April 8, 2008, the date of the filing of the
4  complaint; and post-judgment interest at the federal rate
5  pursuant to 28 U.S.C. § 1961, to be calculated "from the date of
6  the entry of judgment, at a rate equal to the weekly average 1-
7  year constant maturity Treasury yield, as published by the Board
8  of Governors of the Federal Reserve System, for the calendar week
9  preceding the date of the judgment"; and

10        4) Judgment BE ENTERED in favor of Plaintiff Family Tree
11  Farms, LLC, and against Defendant Mouiz Khalifeh, on Plaintiff's
12  third and fourth claims for fraud and negligent
13  misrepresentation, for $117,727.70 in damages; $1617.50 in costs;
14  prejudgment interest at the rate of seven per cent per annum to
15  run beginning on April 8, 2008, the date of the filing of the
16  complaint; and post-judgment interest at the federal rate
17  pursuant to 28 U.S.C. § 1961, to be calculated "from the date of
18  the entry of judgment, at a rate equal to the weekly average 1-
19  year constant maturity Treasury yield, as published by the Board
20  of Governors of the Federal Reserve System, for the calendar week
21  preceding the date of the judgment."

22        This report and recommendation is submitted to the United
23  States District Court Judge assigned to the case, pursuant to the
24  provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the
25  Local Rules of Practice for the United States District Court,
26  Eastern District of California. Within thirty (30) days after
27  being served with a copy, any party may file written objections
28  with the court and serve a copy on all parties. Such a document

should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    March 4, 2009**                         <u>        /s/ Sandra M. Snyder        </u>
                                    UNITED STATES MAGISTRATE JUDGE